UNDERWOOD *v.* A. W. STEVENS CO.

1. NEGLIGENCE — FIRE — CONTRIBUTORY NEGLIGENCE — TRACTION ENGINE—EVIDENCE—EFFECT.

In an action for the loss of a storehouse destroyed by fire as the result of the negligent operation of a traction engine while being removed from plaintiff's premises by defendant, evidence examined, and *held*, that it was open to the jury to find that plaintiff, on being told that all that was wanted was a chance to take the engine, had a right to go about his other business in the expectation that defendant's agents would use such precautions to prevent damage as were necessary, and that plaintiff was not negligent in failing to instruct them as to necessary precautions.

2. SAME—CONTRIBUTORY NEGLIGENCE—PROXIMATE CAUSE.

The negligence relied upon being the propelling of the engine past plaintiff's buildings without the bonnet on the smokestack and with the damper open, the mere presence of plaintiff, and his knowledge that the bonnet was off and the damper open, when the engine was first moved, did not amount to contributory negligence on his part, unless he was in some way responsible for the absence of the bonnet, or had the danger in mind.

3. SAME—INSTRUCTIONS—SUPPORT FROM TESTIMONY.

There is no error in stating to the jury that plaintiff's claim was that he supposed that defendant's agents would put on the spark arrester and have the protection afforded by its use, though there is no direct testimony to that effect, where it is manifest from the evidence that he relied upon them to take the usual precautions, which would, according to the testimony, include the bonnet.

4. EVIDENCE — EXPERT TESTIMONY — SUBJECT — PROPER USE OF TRACTION ENGINE.

Expert engineers may express an opinion as to whether the running of a traction engine past buildings where there was inflammable material, with the damper open, and no spark arrester, was a proper operation of the engine, since it is not a matter necessarily within common knowledge as to how much the issue of sparks would be increased by an open damper.

Error to Lenawee; Chester, J. Submitted April 17, 1907. (Docket No. 76.) Decided July 1, 1907.

Case by Edward F. Underwood against the A. W. Stevens Company for the negligent burning of plaintiff's building. There was judgment for plaintiff, and defendant brings error. Affirmed.

*Frank A. Dean* (*James Helme*, of counsel), for appellant.

*Bird & Sampson*, for appellee.

MONTGOMERY, J. This is an action on the case brought to recover damages for the loss of a storehouse and contents, which were destroyed by fire as the result of the negligent operation of a traction engine while being removed from plaintiff's premises by defendant, who claimed the right of possession thereto by force of a chattel mortgage. The engine was a second-hand one, and was owned by the Huber Manufacturing Company. It was purchased and paid for by plaintiff without any knowledge on his part of the chattel mortgage. Soon after the purchase the defendant demanded the possession of the engine. The demand was refused. The next day defendant, in company with the sheriff of Lenawee county, again demanded the engine. Upon being assured by the sheriff that the chattel mortgage had been kept renewed, and that it was undoubtedly good, and being informed that, if the engine was not delivered to them, legal proceedings would be instituted to get possession of it, the plaintiff yielded the possession to them. The engine was fired up by defendant's agents and propelled under its own steam by the storehouse. Soon afterwards the storehouse was seen to be on fire by a neighbor. Plaintiff and his family left home to go to the village about the time the engine left the premises. The storehouse and contents were wholly consumed. A verdict for $502.93 was returned by the jury, judgment entered

thereon, and defendant has brought the case here by writ of error.

The negligence complained of in the declaration, and upon which recovery was had, was:

1. Propelling the engine by the storehouse under its own steam without a bonnet or spark arrester on the smokestack.

2. Propelling the engine by the storehouse under its own steam with the damper open.

It is contended that the plaintiff participated in the removal of the engine, and was as much responsible for its being run with the screen off and the damper open as was defendant's agents. As the question of plaintiff's contributory negligence was submitted to the jury under instructions which will be adverted to later, the question on this branch of the case is whether, under plaintiff's testimony, it appears that he participated in the acts which were negligent, or knowingly omitted to apprise defendant's agents of the danger or of some means of avoiding it. The engine was in an engine house, the door of which was too low to admit the engine with the hood on. This hood, which consisted of wire screen to be attached to the top of the smokestack, had been removed and hung on a nail driven into a post in the engine house in plain sight, as plaintiff testifies. It was a part of the equipment of the engine and bought with it. It appears that plaintiff on the day in question was present when the engine was fired up. He pointed out to the engineer whom defendant's agents brought with them some kindlings. A fire was built, and the engine was run out of the engine house, a very short distance. Plaintiff himself then moved the engine two or three feet farther away from the engine house. At this stage the party adjourned for dinner. Defendant's agents, numbering six, including a licensed engineer, ate dinner with plaintiff. After dinner defendant's agents again fired up the engine. The plaintiff was present for a short time, but his testimony tends to show that before the engine was moved again he

had left to go to the barn to hitch up a horse for his wife to drive to the city.   He testified that, when the engineer moved out of the yard, he (plaintiff) was with the horse and buggy going up to the house.   There was testimony that at this time the engine was being moved with the dampers open and the bonnet off.

, The defendant's counsel contend that plaintiff was himself in fault in not requiring the bonnet to be put on. Plaintiff's testimony was as follows:

" *Q.* And did they put the bonnet on ?

"*A.* No, sir.

" *Q.* And what is the bonnet ?

"*A.* It was right on a post by the tank, where it is to-day.

"*Q.* In the building where the engine was ?

"*A.* Where the engine was; two feet ahead of the tank, right in plain sight.

" *Q.* Now, what was the bonnet ?   Was that a protection against fire in any way ?

"*A.* Yes, sir; it is made of wire and put on top of a smokestack, always put on top when we move by a building.   A wire screen.

"*Q.* Well, why wasn't it on the engine ?

"*A.* It was took off to back the engine under the shed. It was so low, and always took it off and put it on that post there out of the way.   It was not out of repair in any way, so that it couldn't have been used.   *   *   *   I kept this bonnet or spark protector right on a post about two feet ahead of the tank in the other part of the building. The tank run in one side and the engine in the other. Had to take the screen out because it wouldn't run under—
*   *   *

" *Q.* Now, did you call their attention to this bonnet at the time, tell them where the bonnet was ?

"*A.* No, sir.

" *Q.* Why not?

"*A.* Because they told me all they wanted was a chance to take the engine.

" *Q.* Do you know whether the chattel mortgage covered the bonnet ?

"*A.* I do not.

" *Q.* Did you buy the bonnet with the engine.?

"*A.* Yes, sir.   *   *   *

" Q. Did you think it was dangerous for him to go out of there without any bonnet on?

"A. I didn't think anything about it.   I didn't have any thought on that point.

" Q. Did you think that the bonnet belonged with the engine ?

"A. Supposed it did, came with it.

" Q. You knew that they were going away without it ?

"A. Why, I didn't know what they were going away without.

" Q. You saw that it wasn't on the smokestack ?

"A. I did.

" Q. Why didn't you call their attention to it ?

"A. I was not thinking about that.

" Q. Is that the only reason ?

"A. Yes, sir.

" Q. Did you think they were entitled to it under the chattel mortgage ?

"A. Why, as much as they were to the engine.   The tank at this time was in the east half of the engine shed. There was no partition.   It was all open."

We think it was open to the jury to find that plaintiff, on being told that all that was wanted was the chance to take the engine, had the right to go about his other business in the expectation that the defendant's agents would use such precautions as were necessary.

The court charged the jury as follows :

" In order to charge the plaintiff with contributory negligence in this case, you must find that his negligence contributed to the proximate cause or causes of the fire. In other words, unless the plaintiff was in some way responsible for the bonnet being left off, or the damper opened, if you find the damper was open, he could not be chargeable with contributory negligence in this case; and unless the plaintiff knew or had in mind that the bonnet was left off, or that the damper was open, when it was being driven by the buildings of the plaintiff where the sparks would blow towards the building in question, he could not be chargeable with contributory negligence."

We think this instruction correctly states the law.   It is true, as contended by plaintiff's counsel, that ordinarily a man face to face with danger cannot excuse

the want of care by claiming that he did not have the danger in mind. This rule applies whenever the party concerned has a function or duty to perform in averting the danger for his own or other's protection. In this case, however, the plaintiff owed defendant no duty except to avoid active negligence. He had the undoubted right to assume that defendant would use due care. If, indeed, he had it in mind in advance that the bonnet had not been put in place, and from this inferred that it was not the purpose to take it, he might properly have been found guilty of negligence, but this was a fair question for the jury.

It is contended that the court was in error in stating plaintiff's claim to the jury, in that he stated that plaintiff's claim was that he supposed that defendant's agents would put on the spark arrester and have the protection afforded by its use. There was no such direct testimony. The plaintiff evidently did not have any particular precaution which he expected of defendant's agents in mind; but, as he testifies that he relied upon their assurance that all they wanted was a chance to take the engine, it is manifest that he relied upon them to take the usual or necessary precautions, which would, according to the testimony, include a use of the bonnet. We do not think the jury were misled by this statement of the trial judge.

Error is assigned upon a ruling of the circuit judge permitting competent engineers to express an opinion as to whether the running of this engine past buildings where there was inflammable material, with the damper open, and no spark arrester, was a proper operation of the engine, as not within the domain of expert testimony. We think the testimony was competent. It is not a matter necessarily within common knowledge as to how much the issue of sparks would be increased by an open damper.

We discover no prejudicial error. Judgment affirmed.

MCALVAY, C. J., and OSTRANDER, HOOKER, and MOORE, JJ., concurred.